**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA (FORT WAYNE)**

ZACHARY DANIEL BURCH,
            Plaintiff,

    vs.

EQUIFAX INFORMATION SERVICES
LLC, TRANS UNION LLC; and
PROCOLLECT, INC.;
            Defendants.

CASE NO.  1:26-cv-00155-HAB-ALT

Judge Holly A. Brady
Magistrate Andrew L. Teel

**TRANS UNION LLC'S AMENDED ANSWER TO PLAINTIFF'S COMPLAINT AND DEFENSES**

Trans Union LLC ("Trans Union"), by counsel, responds to Plaintiff's Complaint (the "Complaint") as follows.  For the Court's convenience, Plaintiff's allegations are set forth verbatim with Trans Union's responses immediately following.

1.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

**ANSWER**:    Trans Union admits that the computerization of our society has resulted in an increase in the accumulation and processing of data concerning consumers. Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

2.      However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Credit Burea Defendants acknowledge this potential for misuse and resulting damage every time it sells its respective credit monitoring services to a consumer.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

3.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

4.      These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

**ANSWER**:    Trans Union admits that it is a "consumer reporting agency" as that term is defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. Trans Union admits that it sells consumer reports pursuant to contracts and agreements with subscribers. Trans Union denies the remaining allegations contained in this paragraph. Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

5.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

**ANSWER**:    Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

6.      "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian Info. Sols., Inc.,* 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

**ANSWER**:    Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

7.      Congress made the following findings when it enacted the FCRA in 1970:

The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers. Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4).

**ANSWER**:    Trans Union states that the cited caselaw speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

8.      Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b).

Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear `grave responsibilities.'" *Cushman v. Trans Union,* 115 F.3d 220, 225 (3d Cir. 1997).

**ANSWER**:    Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

9.    The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.,* 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

**ANSWER***:*    Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

10. Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et. seq.,* ("FCRA"), the federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

**ANSWER**: Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

11. The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

**ANSWER**: Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

12. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See 15* U. S.C. § 1681(a)(4).

**ANSWER**: Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

13.    The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

**ANSWER**:    Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

14.    A recurring and *known* issue within the credit reporting industry is the creation of "mixed files."

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

15.    A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

16.     "Mixed files" create a false description and representation of a consumer's credit history.

**ANSWER**:   Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

17.     The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is subject to that Consumer Report." *F.T.C. v. TRW, Inc.,* 784 F. Supp. 361, 362 (N.D. Tex. 1991).

**ANSWER**:   Trans Union states that the cited provision the Federal Trade Commission report speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

18.     Mixed files are not a new phenomenon. The CRA Defendants have been on notice of the existence of mixed files, and the fact that its procedures for creating credit files, including its matching algorithms, are prone to frequently cause mixed files, for over thirty (30) years. *See Thompson v. San Antonia Retail Merchants Ass* 682 F.2d 509, 511 (5th Cir. 1982).

**ANSWER**:   Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information

sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

19.     More recently, the CRA Defendants have been the subject of numerous state attorney general actions relating to its mixed file problem.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

20.     For example, in 2015, the New York Attorney General filed charges and settled claims with Defendant over mixed files. *See In the Matter of Eric T. Schneiderman, Attorney General of the State ofNew York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC.*

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

21.     Notwithstanding the CRA Defendants' notice and being subject to repeated enforcement actions, mixed files continue to occur despite consumers' unique personal identifying information, such as Social Security numbers, date of birth, and addresses.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

22.    The CRA Defendants have been sued thousands of times wherein an allegation was made that they violated the FCRA. Moreover, the CRA Defendants are sued, at a minimum, hundreds of times each year wherein an allegation is made that these Defendants mixed a consumer's credit file with that of another consumer.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

23.    FCRA lawsuits have resulted in multi-million-dollar verdicts for consumers who fall victim to a mixed credit file.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks

knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

24.    For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC,* District of Oregon, Case NO. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another consumer's and failing to unmix them despite Ms. Thomas' numerous disputes. The jury awarded Ms. Thomas $300,000.00 in actual damages and $5,000,000.00 in punitive damages. Despite the verdict, Defendants Equifax and Trans Union continue to mix consumers' credit files with other consumers' credit files.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

25.    In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC,* Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $219,000.00 in actual damages and $2,700,000.00 in punitive damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes. Despite the verdict, the CRA Defendants continue to mix consumers' credit files with other consumers' credit files.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans

Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

26.    In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC,* District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $180,000.00 in actual damages and more than $18,000,000.00 in punitive damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Miller' numerous disputes. Despite the verdict, the CRA Defendants continue to mix consumers' credit files with other consumers' credit files.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

27.    More recently, a jury assessed a $60 million dollar verdict against Trans Union for mixing innocent persons as terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control's "terrorist alert" list based on first and last name alone. *See Ramirez v. Trans Union, LLC,* No. 12-CV-00632-JSC, 2017 WL 5153280, at *I (N.D. Cal. Nov. 7, 2017), *aff'd in part, vacated in part, rev 'd in part sub nom. Ramirez v. Trans Union, LLC,* 951 F.3d 1008 (9th Cir. 20020). Despite the verdict, the CRA Defendants continue to mix consumers' credit files with other consumers' credit files.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

28.    "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong evidence is required to cure the defendant's disrespect for the law." *Dalton v. CAI,* 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA). Moreover, repeated noncompliance with statutory duties can establish that the defendants acted willfully. *See Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty").

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

29.    No less than three federal Courts of Appeal have held a consumer reporting agency violates 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when it mixes a consumer's file with another consumer.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

30.    Notably, the Federal Trade Commission has specifically warned consumer reporting agencies, including Equifax and Trans Union, to review their procedures when a mixed file occurs.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

31.    Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

32.    Plaintiffs claims arise out of the CRA Defendants, Equifax's and Trans Union's blatantly inaccurate credit reporting, wherein CRA Defendants published in a consumer report about Plaintiff the information of another consumer because Defendant Equifax mixed Plaintiff s credit file with that of an unrelated consumer.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

33.    Accordingly, Plaintiff brings claims against Defendants Equifax and Trans Union for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b); for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of a mixed file, and for failing to delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

**ANSWER**:    Trans Union admits that Plaintiff purports to bring an action with Fair Credit Reporting Act ("FCRA") claims but denies the remaining allegations of this paragraph. Trans Union denies that it violated the FCRA (or any other law).

34.    Further, Plaintiff also brings claims against the Furnisher, Defendant ProCollect, for failing to conduct a reasonable investigation to determine whether the information Plaintiff disputed did in fact belong to another consumer and for failing to delete the disputed information from Plaintiff's credit file, in violation of the FCRA, 15 U.S.C. § 1681s-2b.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

35.    As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from the Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.,* as described herein.

**ANSWER**:    Trans Union denies that Plaintiff is entitled to any damages, costs, fees or other relief from or against Trans Union.

## **PARTIES**

36.    Zachary Daniel Burch ("Plaintiff' or "Mr. Burch") is a natural person residing in Fort Wayne, Indiana, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

**ANSWER**:    Trans Union admits that Plaintiff is a natural person and "a consumer" as defined by 15 U.S.C. § 1681a(c). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these remaining allegations, which has the effect of a denial under Rule 8(b)(5).

37.    Defendant Equifax Information Services, LLC ("Defendant Equifax" or "Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of Indiana, including within this District. Equifax can be served at its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

38.    Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating

information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

39.    The information Equifax collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans. Equifax also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

40.    Equifax collects and maintains such information about consumers, whether consumers like it or not. Consumers do not have a choice as to whether Equifax collects and maintains information about them. Not only that, but consumers cannot remove information that Equifax collects and maintains about them from the Equifax database. Further, Equifax sells that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that Equifax sold.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

41.    Defendant Trans Union, LLC ("Defendant Trans Union" or "Trans Union") is a limited liability company with a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661, and is authorized to do business in the State of Indiana, including within this District. Trans Union can be served at its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

**ANSWER**:    Trans Union admits that it is a "consumer reporting agency" as that term is defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. Trans Union admits that it is a Delaware limited liability company with its principal place of business in Chicago, Illinois. Trans Union admits that it sells consumer reports pursuant to contracts and agreements with subscribers. Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

42.    Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

**ANSWER**:    Trans Union admits that it is a "consumer reporting agency" as that term is defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. Trans Union admits that it sells consumer reports pursuant to contracts and agreements with subscribers. Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

43.    The information Trans Union collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans. Trans Union also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

> Trans Union collects and maintains such information about consumers, whether consumers like it or not. Consumers do not have a choice as to whether Trans Union collects and maintains information about them. Not only that, but consumers cannot remove information that Trans Union collects and maintains

about them from the Trans Union database. Further, Trans Union sells that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that Trans Union sold.

**ANSWER**:    Trans Union admits that it is a "consumer reporting agency" as that term is defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. Trans Union admits that it sells consumer reports pursuant to contracts and agreements with subscribers. Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

44.    Defendant ProCollect, Inc. ("Defendant ProCollect" or "ProCollect") is a debt collection agency with a principal place of business located at 12170 Abrams Road, Suite 100, Dallas, TX 75243, and is authorized to do business in the State of Indiana, including within this District.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

45.    ProCollect is a "Furnisher" as defined in 12 CFR 1022.41. ProCollect regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report. A data furnisher, such as ProCollect, is an entity that reports information about consumers to consumer reporting agencies, which may include credit bureaus, tenant screening companies, check verification services, and medical information services, etc. Like CRAs and data users, data furnishers have legal obligations and rules that must be upheld & followed pursuant to 15 U.S.C. § 1681s-2b of the FCRA.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

## JURISDICTION AND VENUE

46.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

**ANSWER**:    Trans Union admits that jurisdiction is proper pursuant to 15 U.S.C. § 1681p.

47.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs claims occurred in this District.

**ANSWER**:    Trans Union admits, based solely on the allegations in the Complaint, that venue is proper in this District.

## STATUTORY BACKGROUND

48.    Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

**ANSWER**:    Trans Union admits only that Plaintiff has asserted claims pursuant to the FCRA. As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

49.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

**ANSWER**:    Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

50.    Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

**ANSWER**:    Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

51.    Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

### THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

52.    Despite its name, the FCRA covers more than just credit reporting, it also regulates consumer reports like the reports the CRA Defendants prepared in Plaintiff's name.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans

Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

53.    The FCRA provides a number of protections for housing applicants who are the subject of consumer reports for the purpose of securing housing and credit. In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of consumer reports, like CRA Defendants, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

**ANSWER**:    Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

54.    The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

**ANSWER**:    Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

55.    Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."
Defendants disregarded their duties under the FCRA with respect to Plaintiff's consumer report.

**ANSWER**:    Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

## FACTUAL ALLEGATIONS
### Plaintiff Applies for Mortgage Financing

56.    In or around December 2025, Plaintiff applied for mortgage pre-approval. Specifically, Plaintiff sought financing to purchase a home and submitted the required application materials.On or about December 17, 2025, in connection with Plaintiff's mortgage application, Plaintiffs mortgage broker obtained Plaintiffs consumer report from CRA Defendants Equifax and Trans Union.Plaintiffs mortgage broker obtained Plaintiff's consumer reports from Defendants Equifax and Trans Union via "hard inquiries" on his credit report.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

### The CRA Defendants Published an Inaccurate Consumer Report to Plaintiffs Mortgage Broker

57.    Plaintiff's mortgage broker obtained consumer reports from the CRA Defendants to determine whether Plaintiff was eligible for mortgage financing.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

58.    On December 17, 2025, the CRA Defendants published consumer reports about Plaintiff to the mortgage broker, wherein each CRA Defendant published information, including a ProCollect collection amount.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

59.     The consumer report, identified as a credit report by the CRA Defendants, is a consumer report regulated by the FCRA.

**ANSWER**:     Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

60.     Within that consumer report, Defendants published inaccurate information about Plaintiff

**ANSWER**:     Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

61.     Specifically, Plaintiff's Equifax consumer report included the ProCollect collection amount:

| | |
|---|---|
| Date Assigned | Sep 15, 2023 |
| Original Amount Owed | $1,401 |
| Amount | $1,401 |
| Status Date | Jan 11, 2026 |
| Status | UNPAID |
| Balance Date | Jan 11, 2026 |
| Account Designator Code | JOINT_ACCOUNT |
| Account Number | ##########3925 |
| Creditor Classification | RENTAL_OR_LEASING |
| Last Payment Date | |
| Date of First Delinquency | Aug 04, 2022 |
| Comments | |

CONSUMER DISPUTES – REINVESTIGATION IN PROGRESS
Contact

PROCOLLECT INC.
12170 Abrams Rd Ste 100
Dallas
TX
75243-4573
(214) 341-7783

**ANSWER:** Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

62. Additionally, Plaintiff's Trans Union consumer report also included the ProCollect collection account:



| | | Account Number | | Account Number |
|---|---|---|---|---|
| Account Number | 4799300 1268**** | Condition | | Condition |

| | | | | | |
|---|---|---|---|---|---|
| Responsibility | Joint | Original Balance | | Original Balance | |
| Current Balance | $1,401 | Limit | | Limit | |
| Original Balance | $1,401 | Monthly Payment | | Monthly Payment | |
| Limit | | Last Payment | | Last Payment | |
| Monthly Payment | | Status | | Status | |
| Last Payment | | Loan Term | | Loan Term | |
| Status | Collection / Charge-Off | Loan Type | | Loan Type | |
| | | Opened | | Opened | |
| | | Reported | | Reported | |
| Loan Term | | Remarks | | Remarks | |
| Loan Type | | Creditor Information | | Creditor Information | |
| Opened | 09/15/2023 | | | | |
| Reported | 01/10/2026 | | | | |
| Remarks | Account Information disputed by consumer, meets FCRA requirem | | | | |

**ANSWER:** Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

63. The ProCollect Account with account number 3825 ("ProCollect Account") published by the CRA Defendants about Plaintiff to the mortgage broker *did not* belong to Plaintiff

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

64. Defendants published inaccurate information about Plaintiff. The above-referenced information should not have been included in any consumer report about Plaintiff

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

65. Specifically, it is indisputable that before furnishing the consumer report about Plaintiff to the mortgage broker, the CRA Defendants failed to use reasonable procedures to assure maximum possible accuracy of the information contained in Plaintiffs consumer reports.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

66. A cursory review of the underlying lease documentation and account records confirms that the ProCollect account belongs to an individual named "Zachary Michael Burch"

("Other Consumer"). Defendants' unreasonable or non-existent procedures allowed them to publish a report about Plaintiff wherein Defendants mixed the credit account history of the Other Consumer into that same report.

**ANSWER**:   Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

67.   Had Defendants actually consulted or obtained the underlying lease documentation and account records, they would have seen the obvious discrepancies between the Other Consumer and Plaintiff.

**ANSWER**:   Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

68.   The discrepancies that should have caused the Defendants to realize Plaintiff is not the same person as the Other Consumer include the following:

**ANSWER**:   Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

69.    Plaintiffs legal name is "Zarchary Daniel Beerman Burch," but the name of the individual subject to the collection account is identified as Zachary Michael Burch;

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

70.    Plaintiff's date of birth, which was provided to the CRA Defendants prior to publishing the consumer report, is June XX, 1981, yet the public court records indicate that the Other Consumer's date of birth is June XX, 2001;

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

71.    Plaintiffs address history confirms that he did not live at the address associated with the lease underlying the ProCollect account, ███████████████ Muncie, Indiana, 47034, and never has; and

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

72.     Plaintiff's Social Security Number, which was provided to the CRA Defendants as contained on the face of the consumer report is entirely different than that of the Other Consumer as confirmed by the public court records.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

73.     The sole reason the inaccurate ProCollect Account was reported as belonging to Plaintiff was that the CRA Defendants failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiffs mortgage broker.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

74.     Had the CRA Defendants followed seasonable procedures, they would have discovered that the ProCollect Account belonged to the Other Consumer with a different middle name than Plaintiff, a different date of birth, different address history, and a different Social Security Number.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a

response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

75. In preparing and selling a consumer report about Plaintiff, wherein the CRA Defendants published to Plaintiff's mortgage broker inaccurate information about Plaintiff, the CRA Defendants failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**ANSWER**: Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**Plaintiffs Mortgage Application is Denied**

76. On or about December 17, 2025, Plaintiff was notified that his mortgage application was denied as a direct result of the ProCollect Account reported by the CRA Defendants.

**ANSWER**: Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

77. Shortly thereafter, Plaintiff obtained a copy of the consumer report and was shocked and distressed upon reviewing and realizing that the ProCollect Account belonging to the Other Consumer was published in the consumer report the CRA Defendants sold about Plaintiff to the mortgage broker.

**ANSWER**: Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

78.     In response to this inaccurate account, Plaintiff contacted his mortgage broker and informed them that the ProCollect Account did not belong to him. Further, he explained that he does not have the same name as the Other Consumer, and that he has a different Social Security Number, date of birth, and address from that of the individual responsible for the same.

**ANSWER**:     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

79.     Plaintiff was very concerned, confused, and distressed about the impact of the account of the Other Consumer being reported on the consumer report — specifically, the impact of the same on his future and his ability to buy a house.

**ANSWER**:     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

80.     Specifically, CRA Defendants matched Plaintiff and the Other Consumer and published the ProCollect Account of the Other Consumer onto the consumer report about Plaintiff and sold that report to Plaintiff's mortgage broker. The underlying lease documentation and account records were widely available to the CRA Defendants prior to publishing Plaintiff's consumer report to Plaintiff's mortgage broker, but the CRA Defendants failed to perform even a cursory review of such information.

**ANSWER**:     Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

**Plaintiff Disputed the Inaccurate Information in his Consumer Reports**

81. On or about December 22, 2025, after learning of the inaccurate ProCollect account and being concerned about the impact of the inaccurate information, Plaintiff disputed the inaccurate information with CRA Defendants Equifax and Trans Union. Plaintiff disputed online with Defendants.

**ANSWER**: Trans Union admits that it received a dispute purportedly from Plaintiff in or around December 2025. Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

82. As part of the disputes, Plaintiff identified himself and provided information to Defendants to support his dispute. Further, Plaintiff specifically disputed the ProCollect Account of the Other Consumer.

**ANSWER**: Trans Union states that the referenced correspondence speaks for itself, and to the extent Plaintiff mischaracterizes the correspondence, Trans Union denies the allegations as stated. Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

83. In his disputes, Plaintiff stated that the ProCollect Account of the Other Consumer does not belong to Plaintiff.

**ANSWER**:    Trans Union states that the referenced correspondence speaks for itself, and to the extent Plaintiff mischaracterizes the correspondence, Trans Union denies the allegations as stated. Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

84.    Plaintiff specifically asked the CRA Defendants to investigate and delete the Other Consumer's records from any consumer report about Plaintiff.

**ANSWER**:    Trans Union states that the referenced correspondence speaks for itself, and to the extent Plaintiff mischaracterizes the correspondence, Trans Union denies the allegations as stated. Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

**Defendant Trans Union Fails to Conduct a Reasonable Reinvestigation and Correct Plaintiff's Consumer Report**

85.    On January 11, 2026, Plaintiff received Defendant Trans Union's correspondence confirming that it had reinvestigated Plaintiff's dispute and determined that its reporting was accurate and that it would not correct the consumer report otherwise.

**ANSWER**:    Trans Union admits that it sent Plaintiff investigation results in or around January 2026. Trans Union states that the referenced correspondence speaks for itself, and to the extent Plaintiff mischaracterizes the correspondence, Trans Union denies the allegations as stated. Trans Union states that it lacks knowledge or information at this time sufficient to form a belief

about the truth of these remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

86.    Defendant Trans Union failed to issue a corrected consumer report to the mortgage broker or to remove the mixed file account appearing on Plaintiff's report.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

87.    Despite Plaintiff's dispute, Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's July 2020 dispute and failed to delete the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

**ANSWER**:    Trans Union denies the allegations contained in this paragraph.

88.    Because Trans Union failed to issue a corrected consumer report, the mortgage could not reconsider its decision to deny Plaintiff's mortgage pre-approval application.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

89.    On or about January 15, 2026, Plaintiff resubmitted a dispute to Defendant Trans Union. Specifically disputing the ProCollect Account still being reported within his consumer report.

**ANSWER**:    Trans Union admits that it received a dispute purportedly from Plaintiff in or around January 2026. Trans Union states that it lacks knowledge or information at this time

sufficient to form a belief about the truth of these remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

90.    Plaintiff received a response to his January 15, 2026 dispute on or about February 10, 2026, wherein Defendant Trans Union agreed to delete the ProCollect Account.

**ANSWER**:    Trans Union admits that it deleted the ProCollect account after receiving Plaintiff's January 2026 dispute. Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

**Defendant Equifax Fails to Conduct a Reasonable Reinvestigation and Correct Plaintiff's Consumer Report**

91.    On or about January 9, 2026, Plaintiff received Defendant Equifax's correspondence confirming that it had reinvestigated Plaintiffs dispute and determined that its reporting was accurate and that it would not correct the consumer report otherwise.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

92.    Defendant Equifax failed to issue a corrected consumer report to the mortgage broker or to remove the mixed ProCollect Account appearing within Plaintiffs consumer report.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

93.    Despite Plaintiffs dispute, Equifax failed to conduct a reasonable reinvestigation of Plaintiff's December 2025 dispute and failed to delete the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

94.    On or about January 11, 2026, Plaintiff resubmitted a dispute to Defendant Equifax. Specifically disputing the ProCollect tradeline still being reported within his consumer report. Plaintiff did not receive a response to this dispute.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

95.    However, upon information and belief, the ProCollect Account was deleted sometime prior to February 4, 2025.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

**Defendant ProCollect Fails to Conduct a Reasonable Investigation and Correct Plaintiff's Consumer Report**

84.[sic]    Upon information and belief, in or around December 2025, Defendant ProCollect received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

85.    Upon information and belief, Defendant ProCollect failed to review all relevant information provided by Defendant Equifax regarding Plaintiffs dispute tendered in or around December 2025, including the differing personal identifying information ("PII") associated with the Plaintiff

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

86.    Upon information and belief, Defendant ProCollect verified the disputed information as accurate to Defendant Equifax in or around January 2026.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

87.    Upon information and belief, in or around December 2025, Defendant ProCollect received Defendant Trans Union's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

88.    Upon information and belief, Defendant ProCollect failed to review all relevant information provided by Defendant Trans Union regarding Plaintiffs dispute tendered in or around December 2025, including the differing PII associated with the Plaintiff.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

89.    Upon information and belief, in or around January 2026, Defendant ProCollect verified the disputed information as accurate to Defendant Trans Union.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

90.    Because Plaintiff also disputed with non-party Experian, upon information and belief, in or around December 2025, Defendant ProCollect also received Experian's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

91.    Upon information and belief, Defendant ProCollect failed to review all relevant information provided by Experian regarding Plaintiff's dispute tendered in or around December 2025.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

92.    Upon information and belief, in or around January 2026, Defendant ProCollect verified the disputed information as accurate to Experian.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

93.    Defendant ProCollect violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

## THE CRA DEFENDANTS' MIXED FILE PROBLEM

96.[sic]    The CRA Defendants know that different consumers have similar names.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

97.    The CRA Defendants know that different consumers can have similar Social Security Numbers.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

98.    The CRA Defendants know that different consumers with similar names can also have similar Social Security Numbers.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

99.    The CRA Defendants know that public records often do contain identifying information such as Social Security Numbers or dates of birth.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

100.    The CRA Defendants match tradelines and public records to a consumer credit file by comparing the information about the consumer associated with the tradeline or public record to the information they maintain about the consumer in the consumer's credit file or files.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

101.    The CRA Defendants accomplish this matching of credit information to consumer credit files through the use of certain matching algorithms or database rules.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

102.    From time to time, the CRA Defendants' matching algorithms match information belonging to one consumer to the credit file of another consumer; resulting in what's commonly known as in the credit reporting industry as a mixed or merged credit file.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks

knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

103.    Mixed files are not a new phenomenon. In fact, as long ago as the early 1990s, the Federal Trade Commission ("FTC") (the government agency charged with enforcement of the FCRA), entered into individual Consent Decrees with each of the major CRAs, specifically including Defendants Equifax and Trans Union, regarding their significant failures and deficiencies with respect to mixed files.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

104.    Despite the CRA Defendants' long-standing and specific knowledge of the mixed file problem, Plaintiff's credit reports were still generated by Defendants Equifax and Trans Union containing information belonging to another consumer.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

105. A mixed or merged credit file is the result of the CRA Defendants inaccurately mixing personal identifying information and credit information and/or an entire credit file belonging to one consumer into the credit file of another consumer.

**ANSWER**: Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

106. There are many different possible causes for the mixing of credit files but all of them relate in one way or another to the algorithms and/or database rules used by the CRA Defendants to match personal identifying information and credit information, including public record information, to a particular consumers' credit file.

**ANSWER**: Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

107. The success or failure of these algorithms or rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to the credit bureaus.

**ANSWER**: Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or

information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

108.    A mixed consumer report could be caused by an improper algorithm just as it could be caused by the inaccurate reporting of a consumer's personal "indicative" information (e.g., name, Social Security number, address, date of birth, etc.) by the furnishers to Defendants Equifax and Trans Union.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

109.    Accordingly, the database rules determine which credit files are selected by the algorithm and merged to create a complete consumer report.

**ANSWER**:    Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

110.    Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one consumer report.

**ANSWER**:   Due to the vague and generalized nature of the allegations, and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

**Plaintiff's Damages as a Result of the Defendants'
Violations of the FCRA**

94.[sic]    Because the Defendants failed to issue corrected consumer reports, the mortgage broker could not reconsider its decision to deny Plaintiffs mortgage pre-approval application.

**ANSWER**:   Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

95.    But for the CRA Defendants' inaccurate consumer reports and Defendant ProCollect's inaccurate data furnishing, Plaintiffs mortgage application would have been approved, and Plaintiff would have been spared the frustration, embarrassment, and stress imposed upon Plaintiff to correct Defendants' erroneous reporting.

**ANSWER**:   Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

96.    The Defendants' false reports cost Plaintiff a mortgage opportunity that met his family's needs and budget.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

97.    Plaintiff was looking forward to securing mortgage financing in order to secure housing for himself and his family.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

98.    Due to the Defendants' unreasonable procedures and shoddy, if any, dispute reinvestigation, Plaintiff suffered financial harm and emotional distress. In particular among other injuries, Plaintiff suffered from stress and agitation as a result of Defendants' failures.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

99.    The injuries suffered by Plaintiff as a direct result of Defendants' erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendants' conduct would have given rise to causes of action based on defamation and invasion of privacy.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

100.    As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, stress, anxiety, fear, frustration, humiliation, and embarrassment.

**ANSWER**:    Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(First Claim for Relief Against Defendants Equifax and Trans Union)**

111.[sic]    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

**ANSWER**:    Trans Union reasserts its answers and responses set forth herein.

112.    The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum passible accuracy* of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

**ANSWER**:    Trans Union states that the cited provisions of the FCRA speak for themselves.

113.    On at least one occasion, Defendants Equifax and Trans Union prepared patently false consumer reports concerning Plaintiff

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

114.    Defendants Equifax and Trans Union mixed another consumer's personal and credit account information into Plaintiffs credit file, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

**ANSWER**:    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

115.    Defendants Equifax and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

**ANSWER**:    Trans Union denies the allegations contained in this paragraph.

116.    As a result of the CRA Defendants' conduct, actions, and inaction, Plaintiff suffered damages including but not limited to, loss of housing opportunities; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**ANSWER**:    Trans Union denies the allegations contained in this paragraph.

117.    The CRA Defendants' conduct, actions, and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendants Equifax and Trans Union were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

**ANSWER**:    Trans Union denies the allegations contained in this paragraph.

118.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants Equifax and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**ANSWER**:    Trans Union denies the allegations contained in this paragraph.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendants Equifax and Trans Union)**

119.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

**ANSWER**:    Trans Union reasserts its answers and responses set forth herein.

120.    The FCRA mandates that the CRA Defendants conduct a reasonable reinvestigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 16811(a)(1). The FCRA imposes a 30-day time limit for the completion of such an investigation. *Id.*

**ANSWER**:    Trans Union states that the cited provisions of the FCRA speak for themselves.

121.    The FCRA provides that if the CRA Defendants conduct their reinvestigation of disputed information and confirm that the information is, in fact, inaccurate or it is unable to otherwise verify the accuracy of the disputed information, they are required to delete the item of information from the consumer's file. *See 15 U.S.C. § 1681i(a)(5)(A).*

**ANSWER**:    Trans Union states that the cited provisions of the FCRA speak for themselves.

122.    Plaintiff initiated a dispute with Defendants Equifax and Trans Union and disputed inaccurate information reporting in his credit files and requested that Defendants correct and/or delete the inaccurate, misleading, and highly damaging information belonging to an unrelated consumer.

**ANSWER**:    Trans Union admits that it received a dispute from Plaintiff regarding the ProCollect account. Trans Union states that it lacks knowledge or information at this time

sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

123.    The CRA Defendants conducted virtually no investigation of Plaintiff's dispute, or such investigation was so shoddy as to allow patently false and highly damaging information to remain in Plaintiffs credit files.

**ANSWER**:    Trans Union denies the allegations contained in this paragraph.

124.    Plaintiff expended resources in the form of time, money, and effort to dispute the inaccurate information with the CRA Defendants, to no avail.

**ANSWER**:    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union denies the allegations contained in this paragraph.

125.    The CRA Defendants violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which it received notice of Plaintiffs dispute; and by failing to maintain reasonable procedures with which to filter and verify information in Plaintiff's credit files.

**ANSWER**:    Trans Union denies the allegations contained in this paragraph.

126.    As a result of the CRA Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**ANSWER**:     Trans Union denies the allegations contained in this paragraph

127.     The CRA Defendants' conduct, actions, and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, the CRA Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

**ANSWER**:     Trans Union denies the allegations contained in this paragraph.

128.     Plaintiff is entitled to recover attorneys' fees and costs from Defendants Equifax and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**ANSWER**:     Trans Union denies the allegations contained in this paragraph.

**COUNT III**
**15 U.S.C. § 1681s-2b**
**Failure to Conduct an Investigation of the Disputed Information and Review of all Relevant Information Provided by the Consumer**
**(First Claim for Relief Against Defendant ProCollect)**

129.     Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

**ANSWER**:     Trans Union reasserts its answers and responses set forth herein.

130.     Defendant ProCollect refused to remove information that belonged to another consumer — namely three ProCollect accounts.

**ANSWER**:     Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

131.     Defendant ProCollect violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiffs dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing

to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to the CRA Defendants; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to the CRA Defendants.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

132.    As a result of Defendant ProCollect's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, loss of credit; loss of housing opportunity; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiffs credit file.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

133.    Defendant ProCollect's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant ProCollect was negligent, entitling Plaintiff to recover under 15 U.S.C. § 16810.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

134.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant ProCollect in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

135.    Determining that Defendants negligently and/or willfully violated the FCRA;

**ANSWER**:    Trans Union denies that Plaintiff is entitled to any damages, costs, fees or other relief from or against Trans Union.

136.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

**ANSWER**:    Trans Union denies that Plaintiff is entitled to any damages, costs, fees or other relief from or against Trans Union.

137.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

**ANSWER**:    Trans Union denies that Plaintiff is entitled to any damages, costs, fees or other relief from or against Trans Union.

138.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

**ANSWER**:    Trans Union denies that Plaintiff is entitled to any damages, costs, fees or other relief from or against Trans Union.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

**ANSWER**:    Trans Union denies that the statements contained in this paragraph require a response from Trans Union.

## DENIAL OF ANY REMAINING ALLEGATIONS

Except as expressly admitted herein, Trans Union denies any remaining allegations contained in the Complaint.

## DEFENSES

1.    Plaintiff has failed to state a claim against Trans Union upon which relief may be granted.

2.    Trans Union's reports concerning Plaintiff were true or substantially true.

3.    Trans Union has at all times followed reasonable procedures to assure maximum possible accuracy of its credit reports concerning Plaintiff.

4.    Plaintiff's claims are barred, in whole, or in part, by the equitable theories of estoppel and waiver.

5.    Plaintiff has failed to take reasonable steps to mitigate his damages, if any.

6.    Plaintiff's damages are the result of acts or omissions committed by Plaintiff.

7.    Plaintiff's damages are the result of acts or omissions committed by non-parties to this action over whom Trans Union has no responsibility or control.

WHEREFORE, Defendant Trans Union LLC, by counsel, denies that Plaintiff is entitled to judgment or to any of the relief sought, and respectfully requests that judgment be entered in its favor and against Plaintiff on all counts set forth in the Complaint, and that

Trans Union LLC, be awarded its costs incurred in defending this action, along with such

other relief as this Court deems equitable and just.

Respectfully submitted,


*/s/Hope Blankenberger*
Hope Blankenberger, Esq. (IN# 381333-49)
Quilling, Selander, Lownds, Winslett &
 Moser, P.C.
10333 North Meridian Street, Suite 200
Indianapolis, IN  46290
Telephone:  317-497-5600, Ext. 614
Fax:  317-899-9348
E-Mail:  hblankenberger@qslwm.com

*Counsel for Defendant Trans Union LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the **2nd day of July, 2026**.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's electronic filing.

| | |
|---|---|
| Austin J. Griffin, Esq. <br> agriffin@consumerjustice.com | Mehak F. Rizvi, Esq. <br> mrizvi@consumerjustice.com |
| Sylas A. Kern, Esq. <br> skern@seyfarth.com | Katherine E. Carlton Robison, Esq. <br> Katherine.carltonrobinson@transunion.com |
| Neil R Peluchette, Esq. <br> npeluchette@taftlaw.com | |

The undersigned further certifies that a true copy of the foregoing was served on the following parties via First Class, U.S. Mail, postage prepaid, on the **2nd day of July, 2026**, properly addressed as follows:

| | |
|---|---|
| None. | |

/s/Hope Blankenberger
Hope Blankenberger, Esq. (IN# 381333-49)
Quilling, Selander, Lownds, Winslett &
 Moser, P.C.
10333 North Meridian Street, Suite 200
Indianapolis, IN  46290
Telephone:  317-497-5600, Ext. 614
Fax:  317-899-9348
E-Mail:  hblankenberger@qslwm.com

*Counsel for Defendant Trans Union LLC*